

LODGED
CLERK, U.S. DISTRICT COURT

03/04/2021

CENTRAL DISTRICT OF CALIFORNIA
BY: _____CLO_____ DEPUTY

FILED
CLERK, U.S. DISTRICT COURT

03/09/20221

CENTRAL DISTRICT OF CALIFORNIA
BY: _____DM_____ DEPUTY

1 DANIEL S. KHAN
Acting Chief
2 KEVIN LOWELL
JASON COVERT (Ind. Bar. No. 29268-53)
3 Trial Attorneys
United States Department of Justice
4 Fraud Section, Criminal Division
    1400 New York Avenue
5    Washington, D.C. 20005
    Telephone: (202) 262-7795
6    E-mail:  kevin.lowell@usdoj.gov
Attorneys for Plaintiff
7 UNITED STATES OF AMERICA

8

**UNITED STATES DISTRICT COURT**

9

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **No. CR** 21-cr-00097 - VAP |
| **Plaintiff,** | |
| **v.** | **PLEA AGREEMENT FOR DEFENDANT** <br> **HAO LIANG HU (a/k/a "FRANK HU")** |
| **HAO LIANG HU ("a/k/a FRANK HU"),** | |
| **Defendant.** | **UNDER SEAL** |

    1.   This constitutes the plea agreement between HAO LIANG HU
(a/k/a "FRANK HU," "the defendant" or "Defendant") and the Fraud
Section of the Criminal Division of the United States Department of
Justice ("the United States").  The plea agreement is based on the
investigation of FRANK HU's involvement in a sophisticated and
widespread bank fraud scheme at Financial Institution A.

    2.   This agreement is limited to the Fraud Section of the
Criminal Division of the United States Department of Justice and
cannot bind any other federal, state, local, or foreign prosecuting,
enforcement, administrative, or regulatory authorities.

## **DEFENDANT'S OBLIGATIONS**

3.   The defendant agrees to:

a.   Give up the right to indictment by grand jury and, at the earliest opportunity requested by the United States and provided by the Court, appear and plead guilty to a single-count Information, in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with conspiracy to commit wire and bank fraud, in violation of 18 U.S.C. § 1349.

b.   Agree that all court appearances, including his change of plea hearing and sentencing hearing, may proceed by video-teleconference ("VTC") or telephone, if VTC is not reasonably available, so long as such appearances are authorized by General Order 20-043 or another order, rule, or statute.  Defendant understands that, under the Constitution, the United States Code, the Federal Rules of Criminal Procedure (including Rules 11, 32, and 43), he may have the right to be physically present at these hearings. Defendant understands that right and, after consulting with counsel, voluntarily agrees to waive it and to proceed remotely.  Defense counsel also joins in this consent, agreement, and waiver. Specifically, this agreement includes, but is not limited to, the following:

i.   Defendant consents under Federal Rules of Criminal Procedure 5(f) and 10(c) and Section 15002(b) of the CARES Act to proceed with his initial appearance and arraignment by VTC or telephone, if VTC is not reasonably available.

ii.   Defendant consents under Section 15002(b) of the CARES Act to proceed with his waiver of indictment, under Federal

Rule of Criminal Procedure 7(b), by VTC or telephone, if VTC is not reasonably available.

          iii. Defendant consents under Section 15002(b) of the CARES Act to proceed with his change of plea hearing by VTC or telephone, if VTC is not reasonably available.

          iv.  Defendant consents under Section 15002(b) of the CARES Act to proceed with his sentencing hearing by VTC or telephone, if VTC is not reasonably available.

          v.   Defendant consents under 18 U.S.C. § 3148 and Section 15002(b) of the CARES Act to proceed with any hearing regarding alleged violations of the conditions of pre-trial release by VTC or telephone, if VTC is not reasonably available.

        c.   Not contest facts agreed to in this agreement.

        d.   Abide by all agreements regarding sentencing contained in this agreement.

        e.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

        f.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

        g.   Be truthful at all times with the United States Probation and Pretrial Services Office, and the Court.

        h.   Pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the United States.

4.   Defendant further agrees:

a.   Truthfully to disclose to law enforcement officials, at a date and time to be set by the United States, the location of, defendant's ownership interest in, and all other information known to defendant about, all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, the illegal activity to which defendant is pleading guilty, and to forfeit all right, title, and interest in and to such items,

b.   To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Assets and to the forfeiture of the assets.

c.   To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Assets, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

d.   Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Assets.  If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Assets on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Assets.

e.   Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Assets.

4

f.    Not to claim that reasonable cause to seize the Forfeitable Assets was lacking.

g.    To prevent the transfer, sale, destruction, or loss of the Forfeitable Assets to the extent defendant has the ability to do so.

h.    To fill out and deliver to the United States a completed financial statement listing defendant's assets on a form provided by the United States.

i.    That forfeiture of the Forfeitable Assets shall not be counted toward satisfaction of any special assessment, fine, costs, or other penalty the Court may impose.

j.    With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives: (1) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture sentencing, and incorporation of the forfeiture in the judgment; (2) all constitutional and statutory challenges to the forfeiture (including by direct appeal, habeas corpus or any other means); and (3) all constitutional, legal, and equitable defenses to the forfeiture of the Forfeitable Assets in any proceeding on any grounds including, without limitation, that the forfeiture constitutes an excessive fine or punishment.  The defendant acknowledges that forfeiture of the Forfeitable Assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty plea.

5. The defendant further agrees to cooperate fully with the United States. This cooperation requires defendant to:

a. Respond truthfully and completely to all questions that may be put to defendant, whether in interviews, before a grand jury, or at any trial or other court proceeding.

b. Attend all meetings, grand jury sessions, trials or other proceedings at which defendant's presence is requested by the United States or compelled by subpoena or court order.

c. Produce voluntarily all documents, records, or other tangible evidence relating to matters about which the United States, or its designee, inquires.

d. If requested to do so by the United States, act in an undercover capacity to the best of defendant's ability in connection with criminal investigations by federal, state, local, or foreign law enforcement authorities, in accordance with the express instructions of those law enforcement authorities. The defendant agrees not to act in an undercover capacity, tape record any conversations, or gather any evidence except after a request by the United States and in accordance with express instructions of federal, state, local, or foreign law enforcement authorities.

6. For purposes of this agreement: (1) "Cooperation Information" shall mean any statements made, or documents, records, tangible evidence, or other information provided, by defendant pursuant to defendant's cooperation under this agreement or pursuant to the letter agreement previously entered into by the parties dated November 4, 2020 (the "Letter Agreement"); and (2) "Plea Information" shall mean any statements made by defendant, under oath, at the

guilty plea hearing and the agreed to factual basis statement in this agreement.

### THE UNITED STATES' OBLIGATIONS

7.   The United States agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

d.   Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court to determine that range is 22 or higher. For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

8.   The United States further agrees:

a.   Not to offer as evidence in its case-in-chief in the above-captioned case or any other criminal prosecution that may be brought against defendant by the United States, or in connection with any sentencing proceeding in any criminal case that may be brought against defendant by the United States, any Cooperation Information. Defendant agrees, however, that the United States may use both Cooperation Information and Plea Information: (1) to obtain and pursue leads to other evidence, which evidence may be used for any

purpose, including any criminal prosecution of defendant; (2) to cross-examine defendant should defendant testify, or to rebut any evidence offered, or argument or representation made, by defendant, defendant's counsel, or a witness called by defendant in any trial, sentencing hearing, or other court proceeding; and (3) in any criminal prosecution of defendant for false statement, obstruction of justice, or perjury.

b.   Not to use Cooperation Information against defendant at sentencing for the purpose of determining the applicable guideline range, including the appropriateness of an upward departure, or the sentence to be imposed, and to recommend to the Court that Cooperation Information not be used in determining the applicable guideline range or the sentence to be imposed.  Defendant understands, however, that Cooperation Information will be disclosed to the probation office and the Court, and that the Court may use Cooperation Information for the purposes set forth in U.S.S.G § 1B1.8(b) and for determining the sentence to be imposed.

c.   In connection with the defendant's sentencing, to bring to the Court's attention the nature and extent of defendant's cooperation.

d.   If the United States determines, in its exclusive judgment, that defendant has both complied with defendant's obligations under paragraphs 3-6 above and provided substantial assistance to law enforcement in the prosecution or investigation of another ("substantial assistance"), it will move the Court pursuant to U.S.S.G. § 5K1.1 to fix an offense level and corresponding guideline range below that otherwise dictated by the sentencing guidelines.

8

1

**DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION**

2        9.   Defendant understands the following:

3           a.   Any knowingly false or misleading statement by

4    defendant will subject defendant to prosecution for false statement,

5    obstruction of justice, and perjury and will constitute a breach by

6    defendant of this agreement.

7           b.   Nothing in this agreement requires the United States

8    or any other prosecuting, enforcement, administrative, or regulatory

9    authority to accept any cooperation or assistance that defendant may

10   offer, or to use it in any particular way.

11          c.   Defendant cannot withdraw defendant's guilty plea if

12   the United States does not make a motion pursuant to U.S.S.G. § 5K1.1

13   for a reduced guideline range or if the United States makes such a

14   motion and the Court does not grant it or if the Court grants such a

15   motion from the United States but elects to sentence above the

16   reduced range.

17          d.   At this time the United States makes no agreement or

18   representation as to whether any cooperation that defendant has

19   provided or intends to provide constitutes or will constitute

20   substantial assistance.  The decision whether defendant has provided

21   substantial assistance will rest solely within the exclusive judgment

22   of the United States.

23          e.   The United States' determination whether defendant has

24   provided substantial assistance will not depend in any way on whether

25   the government prevails at any trial or court hearing in which

26   defendant testifies or in which the government otherwise presents

27   information resulting from defendant's cooperation.

28

1

### NATURE OF THE OFFENSE

2      10.   Defendant understands that for defendant to be guilty of

3 the crime charged in the Information, that is, conspiracy to commit

4 wire and bank fraud, in violation of Title 18, United States Code,

5 Section 1349, the following must be true: (a) there was an agreement

6 between two or more persons to commit the crime of wire fraud, in

7 violation of 18 U.S.C. § 1343, and the crime of bank fraud, in

8 violation of 18 U.S.C. § 1344(2); (b) defendant became a member of

9 the conspiracy knowing of its object and intending to help accomplish

10 it.  The elements of wire fraud, in violation of Title 18, United

11 States Code, Section 1343, are as follows: (a) knowingly and

12 willfully participated in a scheme to defraud; and (b) the use of

13 interstate wire communications to facilitate the scheme.  The

14 elements of bank fraud, in violation of Title 18, United States Code,

15 Section 1344(2), are as follows: (a) knowingly and willfully

16 participated in a scheme to defraud a financial institution or to

17 obtain a financial institution's money by means of false or

18 fraudulent pretenses; and (b) the financial institution was federally

19 insured, a federal reserve bank or a member of the federal reserve

20 system.

21

### PENALTIES AND RESTITUTION

22      11.   Defendant understands that the statutory maximum sentence

23 that the Court can impose for a violation of Title 18, United States

24 Code, Section 1349, is: 30 years imprisonment; a 3-year period of

25 supervised release; a fine of $250,000 or twice the gross gain or

26 gross loss resulting from the offense, whichever is greater; and a

27 mandatory special assessment of $100.

28

12.   Pursuant to Title 18, United States Code, Section 3663A(c)(3)(B), the parties agree that restitution should not be ordered because "determining complex issues of fact related to the cause or amount of the victim's [the bank's] losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process."

13.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

14.   Defendant understands that, by pleading guilty, the defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the Court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case, and suspension or revocation of a professional license.  Defendant understands that

11

unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

## FACTUAL BASIS

15.   Defendant admits that the defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  The defendant and the United States agree to the statement of facts provided below and agree that this statement of facts, as outlined in paragraphs 16 through 41 below, is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraphs 42-43 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

### *Relevant Entities*

16.   Holding Company A was a unitary thrift holding company based in the Eastern District of Michigan.

17.   Holding Company A was registered with the United States Securities and Exchange Commission ("SEC"), an agency of the United States, pursuant to Section 12(b) of the Securities Exchange Act of 1934.  In or around the fall of 2017, Holding Company A completed an initial public offering, and the company's stock began trading publicly on the Nasdaq Stock Market, a national securities exchange.

18.   Financial Institution A was a wholly owned subsidiary of Holding Company A.  Financial Institution A was a federally insured financial institution that offered a broad range of loan products to the residential and commercial markets.  Financial Institution A's headquarters and operational center was located in Southfield, Michigan, in the Eastern District of Michigan, while Financial

1  Institution A's branches were located in San Francisco, California;
2  Los Angeles, California; Seattle, Washington; and New York, New York.
3      19.  Financial Institution A's senior management and most of the
4  bank's operational functions were located in Southfield, Michigan.
5  These operational functions included the majority of the underwriting
6  department and the quality control department.  The underwriting
7  department would receive and review loan applications submitted by
8  the bank's loan officers, including residential mortgage loan
9  applications, and determine whether the bank should originate the
10 loans.  The quality control department would audit loans and loan
11 applications both before and after they were fully funded, to ensure
12 they were in full compliance with the bank's underwriting guidelines
13 and policies.
14     20.  Financial Institution A employed loan officers who worked
15 at the various branches and were responsible for originating
16 residential loans.  Financial Institution A used a commission-based
17 compensation structure for loan officers that was based on the total
18 dollar volume of the residential loans originated by the officer.
19 Generally, the more loans that the loan officer originated, the more
20 personal income the loan officer earned from Financial Institution A.
21     ***Relevant Individuals***
22     21.  The defendant served as a loan officer at Financial
23 Institution A from in or around 2015 through in or around 2019.  His
24 geographic coverage was the greater Los Angeles area, within the
25 Central District of California, and his primary responsibility was to
26 originate residential loans.
27     22.  Executive A served as the Vice President, Managing Director
28 for Residential Lending and Senior Loan Officer at Financial

Institution A.  Among other responsibilities, Executive A provided training and oversight to loan officers and staff, including the defendant, throughout Financial Institution A's operations, including Los Angeles, within the Central District of California.

***Overview of Residential Lending***

23.  It was the practice of Financial Institution A to make loans secured by real property to borrowers.  Such loans were often called mortgages or mortgage loans.  In determining whether or not to extend any such loan, it was also the practice of Financial Institution A to rely upon the information contained in the borrower's mortgage-related documents, such as the Uniform Residential Loan Application (or a "Form 1003") and the mortgage itself, as well as supporting documentation provided by the borrower.

24.  A Form 1003, commonly referred to as a mortgage loan application, was generally used by lending institutions and other lenders in the mortgage loan approval process, including Financial Institution A.  The Form 1003 was designed to be completed by the applicant borrower with the lender's assistance, and required that the borrower truthfully provide to the lender various types of material information, including employment information, monthly income, detailed financial information, and other specifics of the residential property transaction, such as the purchase price and whether the borrower would use the property as a primary residence, secondary residence, or investment.

25.  Near the end of the Form 1003, in the Acknowledgment and Agreement section, the form included, in pertinent parts, an attestation indicating that the borrower agreed and acknowledged to the lender that: (a) the information provided in the application was

true and correct and that any intentional or negligent misrepresentation of the information contained in the application may result in civil or criminal liability; and (b) the information provided in the application would be supplemented in the event material facts changed prior to the closing of the loan.

### *Financial Institution A's Advantage Loan Program*

26.  As described in Holding Company A's public filings submitted to the SEC and disclosed to the investing public, the origination of mortgage loans comprised the largest portion of Financial Institution A's loan portfolio.  Approximately $5 billion in total loans were originated through Financial Institution A's Advantage Loan Program between in or around 2013 and in or around 2019.  The Advantage Loan Program consisted of one-, three-, five-, or seven-year adjustable rate mortgages, and the primary markets for loans originated through the program were in Los Angeles, San Francisco, New York, and Seattle.  In its public filings with the SEC, Holding Company A also indicated that it had a loan approval process through which financial and other information was obtained from borrowers, and that Financial Institution A loan officers were required to meet face-to-face with each borrower as well as produce a narrative document recommending the loan.

27.  Financial Institution A maintained internal underwriting guidelines (the "Underwriting Guidelines") that governed the loan approval process for the Advantage Loan Program.  Pursuant to the Underwriting Guidelines, loan officers were required to obtain various documents from the borrower and the borrower's employer. Among other records, the loan officer would often be required to obtain documentation supporting the borrower's employment and income

including, for instance, a verification of employment ("VOE") letter from the borrower's employer.  Generally, the VOE provided the borrower's title, salary, and start date of employment.  In some instances, the Underwriting Guidelines allowed the borrower to provide bank statements demonstrating a pattern of income for the borrower in lieu of pay stubs or a W-2.

28.  In addition, as part of the application process, if borrowers received funds to help with their down payments, the Underwriting Guidelines required the loan officers to obtain mortgage gift letters, which would memorialize the amount of the "gift," the nature of the relationship between the borrower and the donor, and that the borrower was under no obligation to return the money provided for the down payment on the residence.  Under the Underwriting Guidelines, only family members of the borrower were permitted to provide "gift" funds for a borrower's down payment.

29.  Similarly, Financial Institution A's underwriting department often required loan officers to obtain "letters of explanation" from a borrower to address anomalous aspects of a borrower's loan application, or certain portions of the application that appeared to be inconsistent with the Underwriting Guidelines. For example, a "letter of explanation" from the borrower might be required to document that the borrower was currently living with a family member rent-free, or that negative information in the borrower's credit report was false.

30.  In addition to collecting these documents, loan officers were required to calculate the borrower's debt-to-income ratio ("DTI").  The DTI was a personal finance measure that compared the amount of debt a borrower had to the borrower's overall income and

was used to measure the borrower's ability to manage monthly mortgage payments.  Taken together, the DTI and various documents obtained from the borrower and the borrower's employer were critical to completing the Form 1003 and reaching an underwriting decision on a borrower's application.

### *The Object of the Bank and Wire Fraud Conspiracy*

31.  Beginning at least as early as in or around 2015, and continuing through at least in or around 2019, both dates being approximate and inclusive, in the Central District of California, and elsewhere, the defendant, together with others known and unknown, knowingly combined, conspired, and agreed to commit certain offenses against the United States, namely: (1) bank fraud, in violation of 18 U.S.C. § 1344(2), to wit: the defendant executed and attempted to execute a scheme to defraud Financial Institution A and to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, Financial Institution A, by means of false or fraudulent pretenses, representations, and promises; and (2) wire fraud, in violation of 18 U.S.C. § 1343, to wit: the defendant executed and attempted to execute a scheme to defraud Financial Institution A and to obtain money or property by means of false or fraudulent pretenses, representations, or promises, by transmitting and causing to be transmitted falsified loan applications through interstate wire communications to Financial Institution A, within the Eastern District of Michigan, all in violation of 18 U.S.C. § 1349.

### *The Manner and Means of the Bank and Wire Fraud Conspiracy*

32.  The defendant and others engaged in a widespread conspiracy to engage in a sophisticated bank and wire fraud scheme centering on

Financial Institution A's Advantage Loan Program.  The conspiracy included, but was not limited to, the following manner and means described below.

33.  The scheme was designed to ensure that fraudulent residential loans were approved.  From at least as early as in or around 2015, and continuing on until at least in or around 2019, the defendant, Executive A, and others, (a) falsified Form 1003s; (b) created false and fictitious supporting documents, including verification of employment letters, gift letters, face-to-face interview narratives, and letters of explanation; and (c) falsified borrowers' income and debt-to-income ratios in order to make it appear that borrowers qualified for residential loans.

34.  As part of the scheme, and through the use and reliance upon interstate wire communications, the defendant, Executive A, and others would then send, and cause to be sent, the loan applications and supporting documents containing the false and fictious information to Financial Institution A's underwriting department. The purpose and foreseeable consequence of transmitting the falsified loan applications and supporting documents to the underwriting department was to cause Financial Institution A to approve the fraudulent loans and disburse loan proceeds, and in turn cause Financial Institution A to pay the defendant conspirators commission fees and bonuses.

35.  The false and fraudulent information described above that the defendant and others included and caused to be included in Advantage Loan Program applications, was ultimately transmitted to, and relied upon by, Financial Institution A and its underwriting department and caused Financial Institution A to originate

1  residential mortgage loans and extend credit to borrowers that
2  otherwise would not have qualified for credit from Financial
3  Institution A.

4      36.  As a further part of the scheme, the defendant and his co-
5  conspirators would advise borrowers or the borrowers' agents to
6  transfer funds to third parties, who would then launder the funds
7  back to the borrowers by disguising such funds as "gifts."  In doing
8  so, the defendant and his co-conspirators created a series of layered
9  transactions that was designed to conceal and obscure the true source
10 and origin of the funds used as down payments for the mortgages and
11 promote the underlying bank and wire fraud scheme.

12     37.  As a further part of the scheme, the Advantage Loan Program
13 was utilized, in part, to provide loans to borrowers involved in
14 money laundering and tax evasion activity.  These borrowers operated
15 businesses that did not report their taxable income to U.S. taxing
16 authorities, and instead concealed and disguised the source and
17 origin of their income.

18     38.  Financial Institution A was the lender of last resort for
19 these borrowers, as these borrowers could not substantiate their
20 income in order to qualify for a residential loan from other
21 financial institutions, and were effectively operating outside of the
22 conventional U.S. financial system.

23     39.  Between approximately in or around 2015 and in or around
24 2019, the defendant originated approximately 825 Advantage Loan
25 Program mortgage loans, representing approximately $500,000,000 in
26 credit extended by Financial Institution A.  The overwhelming
27 majority of these loans were fraudulent and were based on one or more
28 of the fraudulent actions described above.

40.   During this same time period, the defendant earned approximately $2,519,488.98 in commissions, which consisted primarily of commissions earned through the origination of the fraudulent loans.  The defendant paid approximately $945,000 in state and federal taxes on this compensation.  The defendant agrees for Sentencing Guidelines purposes that $2,519,488.98 in earned commissions was the "Gain" that he received from the conspiracy.

41.   The defendant committed all of the above acts knowingly and willfully, and with the intent to defraud.  The defendant agrees that he used sophisticated means as part of the fraud scheme.

**SENTENCING FACTORS**

42.   Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

43.   The defendant and the United States agree to the following applicable Sentencing Guidelines factors:

| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a) |
| Financial Gain: $2,523,947.44 | 16 | U.S.S.G. § 2B1.1(b)(1)(I) |
| Sophisticated Means: | 2 | U.S.S.G. § 2B1.1(b)(10)(c) |

Acceptance of Responsibility:      -3  U.S.S.G. § 3E1.1(a)&(b)

Total Offense Level:
                                   22


The United States will agree to a two-level downward adjustment for
acceptance of responsibility (and, if applicable, move for an
additional one-level downward adjustment under U.S.S.G. § 3E1.1(b))
only if the conditions set forth in paragraph 6(c) are met and if
defendant has not committed, and refrains from committing, acts
constituting obstruction of justice within the meaning of U.S.S.G.
§ 3C1.1, as discussed below.  The defendant and the United States
agree not to seek, argue, or suggest in any way, either orally or in
writing, that any other specific offense characteristics,
adjustments, or departures relating to the offense level be imposed.
The defendant agrees, however, that if, after signing this agreement
but prior to sentencing, the defendant were to commit an act, or the
United States were to discover a previously undiscovered act
committed by defendant prior to signing this agreement, which act, in
the judgment of the United States, constituted obstruction of justice
within the meaning of U.S.S.G. § 3C1.1, the United States would be
free to seek the enhancement set forth in that section and to argue
that defendant is not entitled to a downward adjustment for
acceptance of responsibility under U.S.S.G. § 3E1.1.

44.   Defendant understands that there is no agreement as to
defendant's criminal history or criminal history category.

45.   Defendant and the United States reserve the right to argue
for a sentence outside the sentencing range established by the

1 Sentencing Guidelines based on the factors set forth in 18 U.S.C.

2 § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

3 <u>**WAIVER OF CONSTITUTIONAL RIGHTS**</u>

4      46.   Defendant understands that by pleading guilty, defendant

5 gives up the following rights:

6           a.   The right to persist in a plea of not guilty.

7           b.   The right to a speedy and public trial by jury.

8           c.   The right to be represented by counsel — and if

9 necessary have the court appoint counsel — at trial.  Defendant

10 understands, however, that, defendant retains the right to be

11 represented by counsel — and if necessary have the court appoint

12 counsel — at every other stage of the proceeding.

13           d.   The right to be presumed innocent and to have the

14 burden of proof placed on the government to prove defendant guilty

15 beyond a reasonable doubt.

16           e.   The right to confront and cross-examine witnesses

17 against defendant.

18           f.   The right to testify and to present evidence in

19 opposition to the charges, including the right to compel the

20 attendance of witnesses to testify.

21           g.   The right not to be compelled to testify, and, if

22 defendant chose not to testify or present evidence, to have that

23 choice not be used against defendant.

24           h.   Any and all rights to pursue any affirmative defenses,

25 Fourth Amendment or Fifth Amendment claims, and other pretrial

26 motions that have been filed or could be filed.

27

28

1

## WAIVER OF APPEAL OF CONVICTION

2      47.  Defendant understands that, with the exception of an appeal
3  based on a claim that defendant's guilty plea was involuntary, by
4  pleading guilty defendant is waiving and giving up any right to
5  appeal defendant's conviction on the offense to which defendant is
6  pleading guilty.  Defendant understands that this waiver includes,
7  but is not limited to, arguments that the statute to which defendant
8  is pleading guilty is unconstitutional, and any and all claims that
9  the statement of facts provided herein is insufficient to support
10  defendant's plea of guilty.

11

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

12      48.  Defendant agrees that, provided the Court imposes a total
13  term of imprisonment on all counts of conviction within or below the
14  Sentencing Guidelines range corresponding to an offense level of 22
15  and the criminal history category calculated by the Court, the
16  defendant gives up the right to appeal all of the following: (a) the
17  procedures and calculations used to determine and impose any portion
18  of the sentence; (b) the term of imprisonment imposed by the Court;
19  (c) the fine imposed by the Court, provided it is within the
20  statutory maximum; (d) to the extent permitted by law, the
21  constitutionality or legality of defendant's sentence, provided it is
22  within the statutory maximum; (e) the term of probation or supervised
23  release imposed by the Court, provided it is within the statutory
24  maximum; and (f) any of the following conditions of probation or
25  supervised release imposed by the Court: the conditions set forth in
26  General Order 20-04 of this Court; the drug testing conditions
27  mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and
28  drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

1

## RESULT OF WITHDRAWAL OF GUILTY PLEA

2   49.  Defendant agrees that if, after entering a guilty plea

3   pursuant to this agreement, defendant seeks to withdraw and succeeds

4   in withdrawing defendant's guilty plea on any basis other than a

5   claim and finding that entry into this plea agreement was

6   involuntary, then (a) the United States will be relieved of all of

7   its obligations under this agreement, including in particular its

8   obligations regarding the use of Cooperation Information; (b) in any

9   investigation, criminal prosecution, or civil, administrative, or

10  regulatory action, defendant agrees that any Cooperation Information

11  and any evidence derived from any Cooperation Information shall be

12  admissible against defendant, and defendant will not assert, and

13  hereby waives and gives up, any claim under the United States

14  Constitution, any statute, or any federal rule, that any Cooperation

15  Information or any evidence derived from any Cooperation Information

16  should be suppressed or is inadmissible.

17

## EFFECTIVE DATE OF AGREEMENT

18  50.  This agreement is effective upon signature and execution of

19  all required certifications by the defendant, the defendant's

20  counsel, and a United States Department of Justice Trial Attorneys.

21

## BREACH OF AGREEMENT

22  51.  The defendant agrees that if defendant, at any time after

23  the effective date of this agreement, knowingly violates or fails to

24  perform any of defendant's obligations under this agreement ("a

25  breach"), the United States may declare this agreement breached.  For

26  example, if the defendant knowingly, in an interview, before a grand

27  jury, or at trial, falsely accuses another person of criminal conduct

28  or falsely minimizes the defendant's own role, or the role of

another, in criminal conduct, defendant will have breached this agreement. All of defendant's obligations are material, a single breach of this agreement is sufficient for the United States to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the United States in writing. If the United States declares this agreement breached, and the Court finds such a breach to have occurred, then:

a.   If the defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea.

b.   The United States will be relieved of all its obligations under this agreement; in particular, the United States: (i) will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crimes to which defendant has pleaded guilty; and (ii) will no longer be bound by any agreement regarding the use of Cooperation Information and will be free to use any Cooperation Information in any way in any investigation, criminal prosecution, or civil, administrative, or regulatory action.

c.   The United States will be free to criminally prosecute defendant for false statement, obstruction of justice, and perjury based on any knowingly false or misleading statement by defendant.

d.   In any investigation, criminal prosecution, or civil, administrative, or regulatory action: (i) defendant will not assert, and hereby waives and gives up, any claim that any Cooperation Information was obtained in violation of the Fifth Amendment privilege against compelled self-incrimination; and (ii) defendant agrees that any Cooperation Information and any Plea Information, as

well as any evidence derived from any Cooperation Information or any Plea Information, shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that any Cooperation Information, any Plea Information, or any evidence derived from any Cooperation Information or any Plea Information should be suppressed or is inadmissible.

### COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

52. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the United States' sentencing recommendations or the parties' agreements to facts or sentencing factors.

53. Defendant understands that both defendant and the United States are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 54 are consistent with the facts of this case. While this paragraph permits both the United States and defendant to submit full and complete factual information to the United States Probation Office and the Court, even if that factual

information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the United States' obligations not to contest the facts agreed to in this agreement.

54.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one — not the prosecutor, defendant's attorney, or the Court — can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

### NO ADDITIONAL AGREEMENTS

55.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the United States and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

### PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

56.  The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

1  AGREED AND ACCEPTED

2  UNITED STATES DEPARTMENT OF
   JUSTICE
3  CRIMINAL DIVISION
   FRAUD SECTION
4

5  DANIEL S. KAHN
   Acting Chief
6

7  _____                    2/21/2021

8  Kevin Lowell                                     Date
   Jason Covert

9  Trial Attorneys, Fraud Section

10 _____                    1/26/2021

11 Frank Hu                                         Date
   Defendant

12 _____                    01/26/21

13 Adam Braun                                       Date
   Attorney for Defendant Frank Hu

14

15                     **CERTIFICATION OF DEFENDANT**

16       I have read this agreement in its entirety.  I have had enough

17 time to review and consider this agreement, and I have carefully and

18 thoroughly discussed every part of it with my attorney.  I understand

19 the terms of this agreement, and I voluntarily agree to those terms.

20 I have discussed the evidence with my attorney, and my attorney has

21 advised me of my rights, of possible pretrial motions that might be

22 filed, of possible defenses that might be asserted either prior to or

23 at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

24 of relevant Sentencing Guidelines provisions, and of the consequences

25 of entering into this agreement.  No promises, inducements, or

26 representations of any kind have been made to me other than those

27 contained in this agreement.  No one has threatened or forced me in

28 any way to enter into this agreement.  I am satisfied with the

                                   28

representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          1/26/2021
Frank Hu                                  Date
Defendant

### CERTIFICATION OF DEFENDANT'S ATTORNEY

I am Frank Hu's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty plea pursuant to this agreement.

_____          01/26/21
Adam Braun                                Date
Attorney for Defendant Frank Hu